**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DATAVIA CRAYTON, # R-56663,  )
              )
     **Plaintiff,**   )
              )
  **vs.**        )  **Case No. 15-cv-399-NJR**
              )
WARDEN STEPHEN DUNCAN,  )
RANDY STEVENSON,    )
and DONALD GAETZ,    )
              )
     **Defendants.**  )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

  Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a ten-year sentence on a sexual assault conviction. He claims that Defendants failed to obtain a suitable parole location for him, and as a result, he has remained incarcerated at Lawrence past his parole date.

  In the complaint, Plaintiff explains that six months prior to his projected release date of December 24, 2014, he submitted a request to the Field Services Department (headed by Defendant Stevenson), seeking placement in a halfway house because he did not have a place to live upon his release (Doc. 1, p. 5). He was told that he would be submitted for a halfway house placement three days before his release and that some sites would accept offenders with his type of conviction.

  Plaintiff submitted several other follow-up requests to check the status of his parole site. Each time he was told that officials were aware that he is homeless, and they would have

something for him closer to his out-date.  When December 24 arrived, however, Plaintiff was told that Field Services did not find him a halfway house, and he had no approved host site for his parole.  Consequently, Plaintiff was not released, and he was still in prison as of the date he submitted his complaint (March 27, 2015).

Plaintiff filed several grievances over his situation, with no resolution.  Defendant Warden Duncan determined that Plaintiff's "emergency" grievance would not be handled as an emergency.

As to Defendant Gaetz, Plaintiff asserts that as the Deputy Director of the Southern District of the Illinois Department of Corrections ("IDOC"), "he has not established an effective parole system within his Dist[rict], therefore he is denying [Plaintiff his] right to parole" (Doc. 1, p. 5).  Plaintiff seeks an order from this Court "to move IDOC to find a halfway house for [him] to parole to so that [he] can be released to serve [his] parole term" (Doc. 1, p. 6).

**<u>Merits Review Pursuant to 28 U.S.C. § 1915A</u>**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Initially, the Court must independently evaluate the substance of Petitioner's claim to determine if the correct statute – in this case 42 U.S.C. § 1983 or 28 U.S.C. § 2254 – is being invoked. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (dismissing § 1983 claims that should have been brought as petitions for writ of habeas corpus); *Bunn v. Conley*, 309 F.3d 1002, 1006-07 (7th Cir. 2002) (district court should not have recharacterized declaratory judgment action as petition for habeas corpus); *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002) (court must evaluate independently the substance of the claim being brought, to see if correct statute is being invoked). A petition for a writ of habeas corpus is the proper route "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody-whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation." *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991). If, however, the prisoner "is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of confinement and his remedy is under civil rights law." *Id.*; *see also Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999).

If Plaintiff were seeking an order directing Defendants to release him from custody, he could not bring such a request in the context of a civil rights case under § 1983. Instead, he would be required to bring a petition for habeas corpus relief under § 2254. But Plaintiff's request is more nuanced – he wants Defendants (all corrections officials) to find him a suitable halfway house location, which so far they have failed to do despite assurances that attempts were being made to do so. Once acceptable housing is found, then presumably Plaintiff would meet that criterion for release, and he could begin his parole period. The relief Plaintiff seeks, therefore, is within the bounds of a § 1983 action. *See Wilkinson v. Dotson*, 544 U.S. 74 (2005) (prisoner may bring a § 1983 challenge to the constitutionality of state parole procedures); *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992, at *5 (N.D. Ill. March 10, 2014) (convicted sex offenders' challenge to the state's "turnaround" practice of denying release to paroled offenders who lacked approved housing was cognizable under § 1983).

But that is not the end of the inquiry. In order for Plaintiff to proceed with his case, his complaint must indicate that one or more of the Defendants have violated his constitutional rights. The complaint fails to cross this threshold.

Although Plaintiff does not articulate the constitutional basis for his request for injunctive relief, two possible claims are suggested by Plaintiff's allegations in light of the relevant case law:

> **Count 1** - Defendants subjected Plaintiff to cruel and unusual punishment contrary to the Eighth Amendment, by failing to obtain an approved housing site so he could be released on his expected parole date; and

> **Count 2** - Defendants deprived Plaintiff of a liberty interest without due process, in violation of the Fourteenth Amendment, when they failed to find him an approved parole site.

**Dismissal of Count 1 – Eighth Amendment**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment encompasses a claim that prison officials, acting with deliberate indifference, held an inmate beyond the term of his incarceration without penological justification. *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)).

Claims under the Eighth Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  The objective conditions must have resulted in an unquestioned and serious deprivation of a constitutional right.  *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant.  *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994).  In order to satisfy this second requirement, the plaintiff must show that the defendant was deliberately indifferent to a substantial risk of serious harm to the inmate.  *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994).  In other words, the prison official must have acted or failed to act despite the official's knowledge that his course of action (or inaction) could result in a violation of the prisoner's constitutional rights.  *Farmer*, 511 U.S. at 842.  "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013) (other internal quotation and citation omitted)).

As to the objective component of this claim, Plaintiff states that his projected release date was December 24, 2014.  Although the complaint gives no further detail, the online records of the Illinois Department of Corrections reflect that Plaintiff was in fact paroled on December 24, 2014, but was then re-admitted to IDOC custody on the same date.  Website of the Illinois Department of Corrections, Inmate Search page, http://www2.illinois.gov/idoc/Offender/Pages/ InmateSearch.aspx (Last visited May 5, 2015).  This indicates that Plaintiff was most likely "paroled" only to be turned around at the gate and returned to prison (literally or merely on paper), as was the case with the plaintiffs in *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014).  These facts satisfy the objective portion of Count 1.  The remaining question is whether any Defendant was deliberately indifferent to the risk that Plaintiff's incarceration would be improperly extended.

An examination of the complaint reveals nothing that would indicate unconstitutional deliberate indifference on the part of the Defendants.  Plaintiff describes several contacts with either Defendant Stevenson or other prison staff under his supervision, in which he notified them that he had no home to return to and was in need of a halfway-house placement.  Plaintiff was informed that his application for a halfway house would be submitted; there is no suggestion that this was not done.  Plaintiff simply alleges that Defendant Stevenson or the Field Services Department did not find him a halfway house.[1]  Their failure to do so could have been the result of negligence (which does not amount to deliberate indifference); alternatively, Defendant Stevenson or other unnamed officials might have made heroic efforts to seek out a placement (which is the opposite of deliberate indifference), only to find no suitable space available.  It is

---

[1] In a civil rights action, an administrator such as Defendant Stevenson is not liable for the unconstitutional actions of employees working in his department, merely because he is their supervisor. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of *respondeat superior* is not applicable to § 1983 actions).  A civil rights claim may only be maintained against a prison official who was personally responsible for the deprivation of a constitutional right.

also possible that Defendant Stevenson (or someone else) deliberately failed to take reasonable steps to obtain a halfway house spot for Plaintiff, but Plaintiff does not make any factual allegations that might support this conclusion.  In the absence of such factual support, the complaint fails to state a deliberate indifference claim against Defendant Stevenson upon which relief may be granted as to Count 1.

Turning to Defendant Gaetz, Plaintiff merely says that he "has not established an effective parole system within his District" (Doc. 1, p. 5).  Even if this conclusory statement is true, it falls short of suggesting that Defendant Gaetz acted (or failed to act) with the "criminal recklessness" that must be shown in order to satisfy the second component of a deliberate indifference claim.[2]

Finally, the statement of claim contains no allegations that Defendant Warden Duncan was personally involved at all in the attempts (or lack thereof) to find a suitable parole site for Plaintiff.  His only role was to respond to Plaintiff's emergency grievance, filed when Plaintiff

---

[2] The discussion in *Murdock* of the shortcomings of parole system in Illinois vis-à-vis sex offenders is instructive.  *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014).  In a nutshell, the Illinois Prisoner Review Board ("PRB") is responsible for determining whether a prisoner has served a sufficient portion of his sentence to be released on parole/mandatory supervised release, and if so, it can order his release. 730 ILL. COMP. STAT. 5/3-3-7.  The PRB also sets the conditions for parole and determines whether parole should be revoked if a condition is violated. 730 ILL. COMP. STAT. 5/3-3-1.  The IDOC, which is an agency independent from the PRB, retains custody of parolees and supervises them during their parole term.  Before IDOC may release an inmate on parole, it must determine whether an individual parolee is in compliance with all conditions of his supervised release.  These conditions include being housed in a "proper and approved residence."  *Murdock*, 2014 WL 916992, at *9-10 (quoting 20 ILL. ADMIN. CODE § 1610.110(a)(1)).  The Code directs that a parolee "*shall not be released*" until suitable housing arrangements have been made.  § 1610.110(a) (emphasis added).  Sex offenders face many statutory restrictions on where they may reside, such as the home's proximity to schools, parks, day care centers, and other known sex offenders.  See 730 ILL. COMP. STAT. 5/3-3-7.  Numerous sex offenders who are otherwise eligible for parole – the class of Plaintiffs certified in *Murdock* – have been and are continuing to be held in prison by IDOC officials because they lacked an approved residence, and thus could not comply with the conditions of their parole.  This has become known as the "turnaround practice" – an inmate is technically "paroled," but is turned around at the prison gate and returned to custody because he cannot be released without a parole site.  The *Murdock* court characterized this as a "Kafkaesque loop," and observed, "The Plaintiffs are caught in a system that requires the intervention of the Illinois legislature, not this Court."  *Murdock*, at *4, *15.

learned that he would not be released. Defendant Duncan determined that the grievance was not an emergency matter. As such, Plaintiff could still pursue his complaint through the normal grievance channels. A defendant's role in responding to a grievance filed over the misconduct of others does not give rise to liability in a civil rights case, nor is a prison warden subject to liability as a supervisor. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).

For these reasons, the complaint fails to state an Eighth Amendment claim upon which relief may be granted against Defendants Stevenson, Gaetz, or Duncan. **Count 1** shall therefore be dismissed. Out of an abundance of caution, however, the dismissal shall be without prejudice.

## Dismissal of Count 2 – Due Process

This claim presents the question of whether Defendants deprived Plaintiff of a liberty interest without due process when they failed to obtain an acceptable host site for him to serve his term of parole/mandatory supervised release ("MSR").[3]

Initially, the Court must examine whether Plaintiff had a liberty interest protected by the Fourteenth Amendment. A convicted prisoner has no constitutional right to be released from incarceration before the expiration of his sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). While a state may create an expectation of parole that qualifies as a liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Heidelberg v. Ill. Prisoner Review Bd.*, 163 F.3d 1025, 1026 (7th Cir. 1998), the Illinois Supreme Court does not view the Illinois parole/MSR scheme as creating a liberty interest. *See generally Hill v. Walker*, 948 N.E.2d 601, 605-06 (Ill. 2011). The Seventh Circuit has recognized,

---

[3] Illinois statutes use both "parole" and "mandatory supervised release" to refer to the period of conditional release and supervision of an inmate following his term of incarceration. *See* 730 ILL. COMP. STAT. 5/5-8-1(d); 5/3-3-8). While there are differences between the former system of parole in Illinois and the current "mandatory supervised release" scheme, *see People v. Lee*, 979 N.E.2d 992, 1000-01 (Ill. App. 2012), for purposes of this case these terms mean the same thing, and the Court uses them interchangeably.

however, that if an inmate has been placed on parole, he has a liberty interest in retaining that status. *See Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 781 (7th Cir. 2008); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee . . . . the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.").

As noted above, it appears that Plaintiff was indeed paroled, if only as a formality, before he was "readmitted" to the prison because he had no approved host site to which he could be released. In this circumstance, Plaintiff has a protected liberty interest. *See Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992, at *6 (N.D. Ill. March 10, 2014). Further, he was deprived of that interest when he was not permitted to begin his parole/MSR on the scheduled date. In order to maintain a constitutional claim for this loss of a liberty interest, however, Plaintiff must show that one or more Defendants deprived him of his liberty without due process.

The *Murdock* court conducted a thorough analysis of the due process claim brought by the plaintiff class, and that analysis applies equally to the case at bar. *Murdock*, 2014 WL 916992, at *6-12. Due process is "not a static concept," but "requires government to follow 'reasonable procedures' in making its liberty determinations." *Murdock*, 2014 WL 916992, at *6 (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011)). The statutory scheme governing parole release and revocation in Illinois complies with constitutional requirements that a parolee be notified of a claimed parole violation and the evidentiary basis against him, be given an opportunity to be heard and to present a defense and confront witnesses before a neutral hearing body, and receive a written statement of the parole revocation decision and the evidence supporting it. *Id.* at *6-7. The Prisoner Review Board ("PRB") is vested with authority to

conduct revocation hearings, and the IDOC has no authority to do so.  20 ILL. ADMIN. CODE § 1610.140; 730 ILL. COMP. STAT. 5/3-3-9(c); *Murdock*, at *7.  The PRB, however, has unilaterally decided to stop conducting hearings for sex offenders who were denied parole release due to the lack of an approved housing site, because these hearings were a "charade." *Murdock*, at *8.  Therefore, sex offenders who are not released on parole on this basis are not receiving the process described in the state statutes.  Nonetheless, the *Murdock* court determined that the "turnaround practice" did not violate the plaintiffs' due process rights.

As in the case at bar, all defendants in *Murdock* were IDOC officials.  They could not be held responsible for the PRB's decision to stop conducting revocation proceedings for prospective sex-offender parolees, and as IDOC officials, they lacked authority to conduct such hearings.  The chief administrative officer of each prison is also bound to hold a prospective parolee in custody until an approved residence is found.  20 ILL. ADMIN CODE § 1610.110(a). IDOC officials are therefore following the law when they decline to release an inmate who is eligible for parole but cannot satisfy this condition for his release.  *Murdock*, at *8-9.  The court observed:

> [I]t is true that the Plaintiffs had a right to release once the PRB issued a release order, but that right was subject to appropriate conditions being met.  The Plaintiffs did not satisfy a required condition, so the Defendants did not violate the Plaintiffs' right to release by complying with the State of Illinois's constitutional regulations preventing IDOC from releasing parolees without proper housing.

*Murdock*, at *9.

Finally, the *Murdock* court determined that the turnaround practice provides adequate notice to prisoners who face the prospect of continued incarceration despite their eligibility for parole.  *Id*. at *9-10 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (due process clause does not demand "perfect clarity and precise guidance")).  Prisoners are put on notice that

IDOC officials must approve their host site before they can be released, they are notified if their proposed host site location is not approved, and if they disagree with the disapproval, they may "challenge the determination or file a grievance." *Murdock*, at *10. As such, the *Murdock* plaintiffs were not deprived of a liberty interest without due process.

Plaintiff's circumstances differ from the *Murdock* plaintiff class in only one respect. Each of the *Murdock* plaintiffs had identified a parole site and had obtained the PRB's approval of that site, but the IDOC defendants later found the site to be unsuitable. *Murdock*, No. 08-cv-1142 (N.D. Ill.) (Order certifying class, June 7, 2011, Doc. 137). Thus, they were led to believe that they had satisfied this condition for release, only to find out that IDOC would not allow them to begin parole.

Plaintiff, in contrast, never found any parole site for himself, and he was never led to believe that he had satisfied the requirement to identify an acceptable residence. Instead, he depended on Defendants to find him a place to live.[4] As stated in his complaint, he knew that an appropriate placement would have to be found for him before he could be paroled, thus he had advance notice of this condition. He also was notified when Field Services did not find him a halfway house placement. He has filed several grievances over the matter. While Plaintiff is apparently frustrated that his grievances have so far not led to any change in his circumstances, the fact that this procedure has not had a favorable outcome does not mean that he was denied due process.

---

[4] The Illinois Appellate Court, Fourth District, found that the IDOC does not have a statutory or regulatory duty to find a residential placement for inmates who are eligible for parole/MSR, although it has authority to do so. *Lucas v. Dep't of Corr.*, 967 N.E.2d 832, 834-35 (Ill. App. 2012) (denying injunctive relief to sex offender who could not be released without a residential placement that allowed for electronic monitoring).

Plaintiff had notice and an opportunity to seek review of the Defendants' failure or inability to find him a suitable parole location.  The complaint does not articulate any other procedural protections that should have been afforded to Plaintiff in connection with the decision to retain him in IDOC custody, nor do the facts of his case suggest any.  The basic requirements of due process are notice and an opportunity to be heard.  *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 579, (1975) (at a minimum, due process requires "*some* kind of notice and . . . *some* kind of hearing") (emphasis in original); *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974).  As noted above, however, IDOC officials have no authority to conduct a hearing with regard to a denial or revocation of parole, as that function is reserved for the PRB only.  Thus, some opportunity for review short of a hearing must suffice in this situation, and this Court agrees with the *Murdock* court's conclusion that the turnaround practice provides adequate notice and opportunity to challenge the denial of release for sex offenders who lack an approved housing site.

The complaint does not state a cognizable Fourteenth Amendment claim against the Defendants for denying Plaintiff a liberty interest without due process.  **Count 2** shall also be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

**Pending Motion**

Because Plaintiff's claims shall be dismissed, the motion for service of process at government expense (Doc. 3) is **DENIED AS MOOT.**

**Disposition**

**COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  The complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Out of an abundance of caution, Plaintiff shall be allowed one opportunity to submit an amended complaint, if he believes he can provide factual support for an Eighth Amendment deliberate indifference claim in **COUNT 1**. If Plaintiff submits an amended complaint that still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed, and the dismissal shall count as a strike pursuant to § 1915(g). Any amended complaint shall be subject to review pursuant to § 1915A.

**IT IS ORDERED** that, should he wish to submit an amended complaint, Plaintiff shall file his pleading (to be labeled "First Amended Complaint") within 35 days of the entry of this order (on or before **June 12, 2015**). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions, and he should label his amended complaint with Case Number 15-cv-399-NJR. Plaintiff shall specify, *by name*,[5] each Defendant alleged to be liable under Count 1, as well as the actions alleged to have been taken by that Defendant. He shall do the same for any other claims he may include in the First Amended Complaint. New individual Defendants may be added if they were personally involved in the constitutional violation. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be

---

[5] Plaintiff may designate an unknown Defendant as John or Jane Doe, but he should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.   Again, failure to file an amended complaint shall result in the dismissal of this action with prejudice.   Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.   It is not necessary for Plaintiff to file a motion requesting service of process at government expense.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.   This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.   Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:  May 8, 2015**

      _____
      **NANCY J. ROSENSTENGEL**
      **United States District Judge**