## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DATAVIA CRAYTON, # R-56663,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 15-cv-399-NJR** |
| | ) | |
| **RANDY STEVENSON,** | ) | |
| **JOHN DOE (Field Services, First Shift)** | ) | |
| **and JANE DOE (Field Services, First Shift),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court for review of Plaintiff's First Amended Complaint (Doc. 9), filed on May 22, 2015. Plaintiff timely filed his pleading in compliance with this Court's order dismissing the original complaint and granting him leave to amend (Doc. 8). The Court concludes, however, that the amended complaint still fails to state a cognizable claim for violation of Plaintiff's constitutional rights.

Plaintiff is serving a ten-year sentence on a sexual assault conviction, and he is confined at Lawrence Correctional Center ("Lawrence"). He was scheduled to be released on parole on December 24, 2015. But instead of being released, Plaintiff continued to be held in prison because he did not have an approved parole site that complied with the conditions of his release. Plaintiff lays the blame for his continued imprisonment on Defendants, who failed to obtain a suitable parole location for him and disapproved the site applied for by Plaintiff. According to the website of the Illinois Department of Corrections, Inmate Search page,

http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (Last visited Nov. 6, 2015), Plaintiff is still in custody at Lawrence.

Plaintiff's First Amended Complaint includes some additional facts and asserts claims against Defendant Randy Stevenson (the Field Services Supervisor) and two Unknown Defendants (John Doe and Jane Doe) who are Field Services employees. Plaintiff contacted Field Services six months before his projected parole date to request that they find him a halfway house for his post-release residence (Doc. 9, pp. 6, 9). He was told that Field Services would put in a request for his placement closer to his release date. Plaintiff made several follow-up inquiries that generated similar responses. One reply stated that Field Services would not "put [him] in for a place" until three days prior to his release date. *Id.*

On December 24, 2015, Plaintiff was told he had no approved parole site, and, as a result, his parole conditions were violated, and he would remain in prison. Plaintiff himself located a halfway house (the Oxford House) that would accept him, but Field Services refused to approve that site. The reason for the disapproval was that the Oxford House had internet access, and one of Plaintiff's parole conditions is that he "shall have no access to the internet without the approval of a parole officer." *Id.* He includes a copy of a response to his "Offender Request," dated March 12, 2015, which states, "You cannot parole to Oxford House – Waukegan. All their properties have computer/internet." (Doc. 9, p. 10). The form is signed "Field Svcs."

Plaintiff argues that Defendants "failed to look at what [his] stipulations of [his] parole really are," and denied his proposed halfway house "without justification." *Id.* He states that the Parole Board member who conducted his last parole revocation hearing could not understand why Plaintiff's site was denied. He asserts that Defendants' actions displayed deliberate indifference to the fact that Plaintiff would be incarcerated longer than is required. As relief,

Plaintiff asks the Court to "move IDOC to approve [him] to go to the Oxford House in Waukegan, IL, or find another place for [him] to parole to immediately" (Doc. 9, p. 8)

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Just as with the original complaint, § 1915A requires the Court to review the amended complaint and dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

In reviewing the original complaint, the Court identified the following potential claims that could arise from Plaintiff's factual scenario:

> **Count 1** - Defendants subjected Plaintiff to cruel and unusual punishment contrary to the Eighth Amendment, by failing to obtain an approved housing site so he could be released on his expected parole date; and

> **Count 2** - Defendants deprived Plaintiff of a liberty interest without due process, in violation of the Fourteenth Amendment, when they failed to find him an approved parole site.

(Doc. 8, p. 4). The Eighth Amendment claim (Count 1) was dismissed without prejudice, and it is this claim that Plaintiff reasserts in the First Amended Complaint. The Fourteenth Amendment claim (Count 2) was dismissed with prejudice.

**Dismissal of Count 1 – First Amended Complaint**

As this Court noted in discussing Plaintiff's original complaint, the Eighth Amendment encompasses a claim that prison officials, acting with deliberate indifference, held an inmate beyond the term of his incarceration without penological justification. *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing Campbell v. Peters, 256 F.3d 695, 700 (7th Cir. 2001)). The undersigned further observed that the "turnaround practice" which resulted in Plaintiff being "paroled" on December 24, 2014, only to be immediately returned to prison for lack of an approved parole site, satisfies the objective portion of an Eighth Amendment claim (See Doc. 8,

pp. 5-6).

The original complaint did not, however, indicate that any Defendant had the required mental state of deliberate indifference to the risk that Plaintiff's incarceration would be improperly extended past his parole date. "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.' " *Armato*, 766 F.3d at 721 (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)) (other internal quotation and citation omitted). Plaintiff's original complaint simply alleged that Defendants failed to find him a halfway house to which he could be paroled, and it did not include any facts to suggest that Defendants ignored the risk that Plaintiff might not be released from prison when he became eligible for parole.

The First Amended Complaint adds the factual allegations that Defendants knew about Plaintiff's proposed halfway house, but rejected that location "without justification." But the complaint also sets forth the very reason why Defendants denied approval for the Oxford House–internet access was available there, and Plaintiff's parole conditions would be violated if he were to access the internet without his parole officer's permission. As discussed in this Court's previous order, the IDOC is prohibited from releasing a prisoner from its custody until all conditions of his/her supervised release are satisfied, including a proper and approved residence. Despite what Plaintiff may believe, the availability of internet access provides an obvious "penological justification" for Defendants to deny approval for the Oxford House as Plaintiff's parole residence. *See Armato*, 766 F.3d at 721. This decision does not demonstrate deliberate indifference to Plaintiff's situation.

Other than the specific example of the Oxford House disapproval, Plaintiff provides no further factual support for a deliberate indifference claim beyond what he offered in the original

complaint. Plaintiff's remaining factual allegations in the First Amended Complaint include that he contacted Defendants on several occasions; he was told that they were aware of his need, they would submit his halfway house request closer to his release date, and they would let him know when a place became available. There is no indication that Defendants did not do as they said they would. Whatever efforts Defendants made to find a parole site for Plaintiff did not succeed. The Court is left to speculate as to whether Defendants made a reasonable attempt to find Plaintiff a suitable halfway house (which would defeat a deliberate indifference claim) or deliberately failed to take appropriate steps to do so. Such rank speculation is not enough to state a viable claim that Defendants purposely or recklessly violated Plaintiff's constitutional rights.

It is unfortunate that no suitable housing has been found for Plaintiff to assist in his return to society under the conditions imposed by the Prisoner Review Board. Many other inmates serving sentences for sex offenses have faced, and continue to face, the same situation–as discussed in *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014). The *Murdock* court opined: "The Plaintiffs are caught in a system that requires the intervention of the Illinois legislature, not this Court." *Murdock*, at *4, *15. This Court shares that concern. This problem, at least in Plaintiff's case, however, does not rise to the level of an Eighth Amendment violation.

Plaintiff's deliberate indifference claim in Count 1 shall be dismissed once more, without prejudice. Further, the entire action shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Disposition

For the reasons stated above, this action is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

**DATED: November 9, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**